**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WASHINGTON-BALTIMORE NEWS
GUILD, LOCAL 32035,

     *Plaintiff,*

v.

THE WASHINGTON POST,

     *Defendant.*

Civ. No. 1:22-02484 (CKK)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

**<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

      A.  The Parties' Collective Bargaining Agreement ............................................ 2

      B.  The Farhi and Sonmez Grievances ................................................................ 4

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.     THE CBA EXPRESSLY PRESERVES THE PARTIES' RIGHT TO JUDICIAL
      RESOLUTION OF ARBITRABILITY DISPUTES ............................................................ 6

II.    THE CBA MANDATES ARBITRATION OF DISPUTES ONLY "DURING
      THE TERM OF THIS AGREEMENT," NOT AFTER ITS EXPIRATION ......................... 11

      A.  Whether a Dispute is Arbitrable Under an Expired CBA Presents
          a Matter of Ordinary Contract Interpretation ........................................... 12

      B.  The Post and the Guild Expressly Limited Mandatory Arbitration
          to "During the Term of" Their CBA ......................................................... 14

CONCLUSION .................................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*AFSCME Council 25 v. Wayne Cnty.*,
    810 N.W.2d 53 (Mich. Ct. App. 2010) ........................................................................14, 15

*Air Line Pilots Ass'n, Int'l v. PBGC*,
    193 F. Supp. 2d 209 (D.D.C. 2002) ..................................................................................16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..................................................................................................1, 7, 9

*Calderon v. Atlas S. S. Co.*,
    170 U.S. 272 (1898) .........................................................................................................16

*Carbon Fuel Co. v. United Mine Workers of Am.*,
    444 U.S. 212 (1979) ...........................................................................................................7

*Cobarruviaz v. Maplebear, Inc.*,
    143 F. Supp. 3d 930 (N.D. Cal. 2015) .............................................................................10

*Collins v. Univ. of Notre Dame Du Lac*,
    929 F.3d 830 (7th Cir. 2019) ...........................................................................................16

*Commc'ns Workers of Am. v. AT&T Inc.*,
    6 F.4th 1344 (D.C. Cir. 2021) ..........................................................................................10

*Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*,
    765 F.3d 396 (5th Cir. 2014) ...........................................................................................10

*Lansing Newspaper Guild v. Federated Publications, Inc.*,
    No. 94-CV-71658, 1995 WL 871139 (E.D. Mich. Feb. 22, 1995).......................................15

*Litton Fin. Printing Div. v. NLRB*,
    501 U.S. 190 (1991) .................................................................................................. *passim*

*Lopez v. Nat'l Archives & Recs. Admin.*,
    301 F. Supp. 3d 78 (D.D.C. 2018) .....................................................................................5

*Nolde Bros., Inc. v. Loc. No. 358, Bakery & Confectionery Workers Union*,
    430 U.S. 243 (1977)................................................................................................12, 13, 16

*Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs. Ltd.*,
    902 F. Supp. 2d 87 (D.D.C. 2012) .....................................................................................9

*Schuler v. PricewaterhouseCoopers, LLP*,
    514 F.3d 1365 (D.C. Cir. 2008) .........................................................................................5

*Serv. Emps. Int'l Union Loc. 32BJ v. Diversified Servs. Grp., Inc.*,
    958 F. Supp. 2d 166 (D.D.C. 2013) .................................................................................13

*Tiffany v. KO Huts, Inc.*,
    178 F. Supp. 3d 1140 (W.D. Okla. 2016) ......................................................................9, 10

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) ............................................................................................12, 13

*Wash. Mailers Union No. 29 v. Wash. Post Co.*,
   233 F.3d 587 (D.C. Cir. 2003) ....................................................................................7

*Wash. Metro. Area Transit Auth. v. Mergentime Corp.*,
   626 F.2d 959 (D.C. Cir. 1980) ..................................................................................14

*Wash.-Balt. Newspaper Guild, Loc. 35 v. Wash. Post*,
   959 F.2d 288 (D.C. Cir. 1992) ..............................................................................8, 11

*Wharf, Inc. v. District of Columbia*,
   No. 15-CV-1198, 2021 WL 1198143 (D.D.C. Mar. 30, 2021) ...............................16

*Wilkes-Barre Hosp. Co., LLC v. NLRB*,
   857 F.3d 364 (D.C. Cir. 2017) ..................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ................................................................................................................5

## INTRODUCTION

The issue in this action is whether two labor grievances are subject to mandatory arbitration under an *expired* collective bargaining agreement between the Washington-Baltimore News Guild, Local 32035 ("the Guild") and The Washington Post ("The Post").

There is no dispute that the parties' collective bargaining agreement ("CBA") expired on June 30, 2022.  Nor is there any dispute that the Guild tried to invoke arbitration of the grievances at issue *after* that date.  Finally, there is no dispute that the text of the CBA mandates arbitration as the sole and exclusive means of grievance resolution only "*[d]uring the term*" of the agreement. ECF 1-1 ("CBA"), Art. XXIII(6) (emphasis added).  That express language makes clear that these grievances are not subject to arbitration under the parties' contract.

The Guild's lead argument is that the parties supposedly agreed to delegate arbitrability disputes to the arbitrator for resolution.  That is manifestly false. The CBA expressly provides that "*neither party shall be deemed to have waived its right to have a court decide the issue of arbitrability.*"  CBA, Art. XXIII(5) (emphasis added).  On top of that clear and express contract language, the parties' bargaining history confirms an unequivocal intent to preserve each party's right to have a court decide arbitrability; in negotiations in 1995, The Post and the Guild *agreed to eliminate* prior language giving arbitrators authority to decide arbitrability and *replaced* it with the current language preserving a judicial forum for arbitrability disputes.  The Guild cannot show that "the parties clearly and unmistakably" *waived* their right to a judicial forum on arbitrability where the contract expressly *preserves* that right.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  The sole basis for the Guild's argument is that the CBA incorporates AAA rules to govern arbitration hearings, but that cannot plausibly amount to a clear, unmistakable delegation given the express CBA language and on-point bargaining history to the contrary.

Accordingly, the underlying question presented by this case—whether the two grievances are arbitrable under the parties' CBA—is properly for this Court to decide. And, on the merits of that question, The Post is correct as a matter of law. Contrary to the Guild's claims, there is no thumb on the scales in favor of arbitration when the parties' CBA has expired. The Supreme Court specifically held as much. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 209 (1991). Rather, under *Litton*, the question is simply one of contract interpretation: Did the parties agree to arbitrate the dispute or not? Here, the CBA's plain language establishes that these grievances are not arbitrable. Again, the CBA limits the right (and the corresponding obligation) to arbitrate to "[d]uring the term of [the] Agreement." CBA, Art. XXIII(6). The right to arbitrate thus expired with the expiration of the CBA. That language "negate[s] expressly" the Guild's claim that the disputes are arbitrable. *Litton*, 501 U.S. at 204–05. The Guild offers no credible alternative interpretation of this language, and would instead ignore it and thus effectively excise it from the CBA. That is now how contract interpretation works.

In short, because the Guild seeks to compel arbitration of grievances that are not arbitrable, its claim fails as a matter of law, and The Post is entitled to summary judgment in its favor.

## BACKGROUND

### A.    The Parties' Collective Bargaining Agreement.

As summarized above, this case concerns the proper interpretation of an expired CBA between The Post and the Guild. The Guild "has represented a bargaining unit of employees of the Post for decades … under a series of collective bargaining agreements." ECF 1 ("Compl.") at 2. The most recent agreement—the one at issue here—became effective on July 13, 2018. *See* CBA at 2. It ultimately expired on June 30, 2022, after two prior extensions. Defs. Statement of Undisputed Material Facts ("SUMF") ¶ 3; ECF 1-2 ("Second Extension") at 2.

The CBA sets forth a three-step grievance and arbitration procedure that (subject to the limits described below) governs resolution of disputes thereunder.  *First*, "[w]henever there is a disagreement involving an alleged violation of a specific provision of [the] Agreement, including a controversy over any form of discipline, the aggrieved party shall" submit a written grievance to the other party.  CBA, Art. XXIII(2).  *Second*, the grieving party, within a set time period, may "refer the grievance to the Grievance Committee."  CBA, Art. XXIII(3).  *Third*, "[i]f no decision is reached at the Grievance Committee meeting, the grieving party may … serve a written demand for arbitration (by a single arbitrator) on the other party."  CBA, Art. XXIII(4)(a).

The CBA also provides specific rules that govern any arbitration between the parties.  The CBA provides that any arbitration hearing be conducted consistent with certain Labor Arbitration Rules promulgated by the American Arbitration Association ("AAA"):

> The arbitration hearing shall be conducted according to the Voluntary Labor Arbitration Rules of the American Arbitration Association; however, the AAA shall have no authority as to the conduct of the hearing or the arbitration unless otherwise agreed to by the parties.  The decision of the arbitrator shall be final and binding, it being understood and agreed, however, that neither party waives any legal rights it may have.

CBA, Art. XXIII(4)(c).

Notwithstanding that limited incorporation of the AAA Rules for hearing procedures, the CBA also provides that, "[i]f either party raises a question of arbitrability as to a grievance," the parties are entitled to have that question resolved by a court:

> If either party raises a question of arbitrability as to a grievance, such party shall be entitled to a separate, initial hearing before a separate arbitrator on arbitrability only, unless the parties agree otherwise, and a subsequent arbitration on the merits shall not be held unless the grievance is found arbitrable; provided, however, that *neither party shall be deemed to have waived its right to have a court decide the issue of arbitrability instead of an arbitrator.*

CBA, Art. XXIII(5) (emphasis added).

Importantly, the parties' duty to arbitrate grievances under the CBA is not unlimited. Rather, it applies only "[d]uring the term of [the] Agreement or any extension thereof." CBA, Art. XXIII(6). Specifically, the CBA states the following:

> During the term of this Agreement or any extension thereof, the grievance and arbitration procedures of the Agreement shall be the sole and exclusive means of settling any and all alleged violations of any specific provision of the Agreement, except as otherwise provided in the agreement.

*Id.* As consideration for The Post's agreement to arbitrate during the term of the CBA, the same section provides that neither "the Guild [nor] any employees covered by [the] Agreement [shall] engage in any strike or sympathy strike (other than a by-line strike), work stoppage, slowdown, concerted refusal to work or other interference with or stoppage of work." *Id.*

## B. The Farhi and Sonmez Grievances.

At issue in this case are two grievances filed by the Guild. The first grievance challenged the suspension of Post employee Paul Farhi as "without just and sufficient cause" under the CBA. *See* ECF 1-3 at 2. The second grievance challenged the dismissal of Post employee Felicia Sonmez as likewise "without just and sufficient cause." *See* ECF 1-7 at 2. Neither grievance reached voluntary resolution. *See* Compl. ¶¶ 11, 17; ECF 8 ("Answer") ¶¶ 11, 17.

After expiration of the CBA on June 30, 2022, the Guild attempted to invoke arbitration of these grievances. Specifically, on July 15, 2022, the Guild demanded arbitration of the Farhi grievance. ECF 1-4 at 2; SUMF ¶ 10. And on August 1, 2022, the Guild similarly requested arbitration of the Sonmez dispute. ECF 1-10 at 2; SUMF ¶ 11. Shortly after, the Guild's counsel asked The Post to select an arbitrator to resolve these grievances. ECF 1-4 at 2. The Post declined, explaining that "the parties' expired agreement limits the right to arbitrate to '[d]uring the term of this Agreement.'" ECF 1-11 at 2–3.

In light of The Post's position on arbitrability, the Guild asked The Post to advise whether it was "exercising its right under Section 5 of Article XXIII to a determination of arbitrability before an arbitrator, or whether [the Guild] should bring [the] matter to the attention of the Federal Court." *Id.* at 2.  In other words, the Guild understood that The Post had a choice of venue.  The Post responded that it intended "to exercise its right to have [the] arbitrability issue determined by a court, rather than by an arbitrator." *Id.*  Ten days later, the Guild filed this lawsuit asking this Court to compel arbitration of the Farhi and Sonmez grievances.  *See* Compl.

After The Post filed its answer on September 28, 2022, the Guild moved for judgment on the pleadings.  ECF 10.  The parties then stipulated to a briefing schedule for cross-motions, which the Court approved.  The Post now opposes the Guild's motion for judgment on the pleadings and, instead, moves for summary judgment.  This memorandum supports both filings.

## LEGAL STANDARD

Particularly where (as here) the facts are undisputed, the standards of review for motions for judgment on the pleadings and motions for summary judgment are similar.  A moving party is "entitled to pretrial judgment on the pleadings 'if [it] demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law.'" *Lopez v. Nat'l Archives & Recs. Admin.*, 301 F. Supp. 3d 78, 83–84 (D.D.C. 2018) (quoting *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008)).  Likewise, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 85 (quoting Fed. R. Civ. P. 56(a)).  In assessing either a motion for judgment on the pleadings or a motion for summary judgment, the Court "must 'view the facts and draw reasonable inferences "in the light most favorable to the party opposing"'" the motion.  *Id.* at 84, 86.  When evaluating a motion for judgment on the pleadings, "the Court may only consider the contents of the pleadings." *Id.* at 84.

# ARGUMENT

Given the express terms of the parties' CBA, the Guild had no right to demand arbitration after the expiration of the agreement.  In arguing otherwise, the Guild first contends that the parties delegated arbitrability disputes like this one to the arbitrator to decide, and that the Court therefore should compel arbitration without resolving whether the grievances are arbitrable.  That is plainly wrong.  Parties can delegate arbitrability to the arbitrator only by doing so clearly and unmistakably. Here, the CBA expressly *preserves* the parties' right to have a court resolve such disputes.

Turning to the merits of the arbitrability dispute, the question is simply whether the CBA mandates arbitration under these circumstances.  Again, the Guild goes off-track by invoking a presumption of arbitrability; no such presumption exists when a CBA has *expired*.  This is instead a straight-up question of contract interpretation.  And the contractual terms are clear that arbitration is mandatory only "[d]uring the term of this Agreement."  As other courts have recognized, express durational language like this means that even disputes that factually arise during the CBA's term may not be forced into arbitration after the CBA has expired.  That is the end of the inquiry.  As a matter of law, these grievances are not arbitrable, and the Court should rule accordingly.

## I.   THE CBA EXPRESSLY PRESERVES THE PARTIES' RIGHT TO JUDICIAL RESOLUTION OF ARBITRABILITY DISPUTES.

At the outset, the Guild contends that the Court need not resolve the question of substantive arbitrability, because the CBA supposedly delegates that question to the arbitrator.  *See* ECF 10-1 ("Guild Br.") at 6–7.  Indeed, the Guild leads with that argument, reserving its merits position for an alternative "*arguendo*" ground.  *Id.* at 7–8.  But the Guild is plainly wrong about delegation. The parties specifically stipulated in the CBA that either side remained free to take arbitrability disputes directly to "a court."  CBA, Art. XXIII(5).  Settled Supreme Court law requires respecting that contractual stipulation.  The Guild ignores both the contract language and the law.

**A.**     The legal framework for the delegation inquiry is established: "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T*, 475 U.S. at 649.  "The determination of whether a dispute is arbitrable under a collective bargaining agreement is a question of law for the court, *unless the parties unmistakably agree to submit the issue of arbitrability to arbitration*." *Wash. Mailers Union No. 29 v. Wash. Post Co.*, 233 F.3d 587, 589 (D.C. Cir. 2003) (emphasis added).  In other words, the default is that the court resolves arbitrability disputes, not the arbitrator; only clear and unmistakable evidence of the parties' intent to delegate can overcome that.

There is no such clear and unmistakable evidence here.  To the contrary, the CBA expressly addresses the question of who should decide arbitrability—and stipulates that the parties are *not* waiving their right to a judicial forum.  It provides that "neither party shall be deemed to have waived its right to have a court decide the issue of arbitrability instead of an arbitrator."  CBA, Art. XXIII(5).  The CBA could thus hardly be clearer that the parties did not agree to give up their right to a judicial forum to resolve threshold questions of substantive arbitrability.  And the Guild conceded the point in pre-dispute communications: When The Post challenged the arbitrability of these grievances, the Guild wrote to ask The Post whether it was "exercising its right under Section 5 of Article XXIII to a determination of arbitrability before an arbitrator, or whether [the Guild] should bring [the] matter to the attention of the Federal Court."  ECF 1-11 at 2.

**B.**     Although the contractual text alone is clear that the Guild and The Post intended to preserve each party's right to have a court resolve arbitrability, the parties' bargaining history makes that same conclusion unmistakably clear.  *See Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 219–22 (1979) (looking to bargaining history to elucidate meaning of contract provision).

7

Specifically, in their 1995 negotiations, The Post and the Guild rewrote the CBA's arbitration provisions to *eliminate* prior language that gave arbitrators authority to decide arbitrability disputes and agreed instead to the current language preserving each party's right to have arbitrability resolved in court. *See* Dunn Decl. ¶ 3 & Ex. B at 2, 5.

They did so for a reason. In the early 1990s, the Guild sued The Post to compel arbitration of a grievance under the 1989 CBA. At that time, Article XXII(2) of the parties' contract provided that "'[a] grievance, ... *including any question of whether a grievance is arbitrable*, ... may be submitted to arbitration by the moving party' (emphasis added)." *Wash.-Balt. Newspaper Guild, Loc. 35 v. Wash. Post*, 959 F.2d 288, 291 (D.C. Cir. 1992); *see also* Dunn Decl. ¶ 2 & Ex. A at 4. Relying on this clear delegation in the 1989 CBA, the D.C. Circuit held that the question of arbitrability had to be submitted to an arbitrator for resolution. *See Wash.-Balt. Newspaper Guild*, 959 F.2d at 291.

In the next round of negotiations in 1995, The Post set out to eliminate this language delegating arbitrability questions to an arbitrator without The Post's agreement—in other words, to preserve The Post's right to have those questions decided in court. To that end, during the parties' 1995 negotiations, The Post proposed to delete the prior delegation language and replace it with what is now Article XXIII(5) of the CBA, citing the parties' litigation over arbitrability under the 1989 CBA and explaining that The Post was no longer willing to submit questions of arbitrability to an arbitrator. *See* Dunn Decl. ¶ 4 & Ex. C at 3, 8-9; *see also id.* Ex. C at 13 ("We have very strong views on arbitrability questions not going to an arbitrator."); *id.* at 19 ("We are not willing to renew [provision stating that issues of arbitrability going to the arbitrator] because the law says we don't have to have an arbitrator decide them."); *id.* at 35 ("There is a proviso that neither party waives its substantive right to have arbitrability decided in court").

The Post never wavered on preserving its right to have substantive arbitrability issues resolved by courts rather than arbitrators. The 1995 CBA—and every Post-Guild CBA since then—has thus expressly preserved the parties' right to have courts decide arbitrability questions. *See generally* Dunn Decl., Exs. B & C; SUMF ¶ 5.

    **C.**    Ignoring the CBA's plain language and this bargaining history, the Guild seeks to imply an intent to delegate arbitrability disputes from the following CBA provision: "arbitration hearing[s] shall be conducted according to the Voluntary Labor Arbitration Rules of the American Arbitration Association." CBA, Art. XXIII(4)(c). The Guild goes on to argue that the AAA Rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction" (ECF 10-1 at 17), and invokes caselaw holding that incorporation of the AAA Rules amounts to an agreement to delegate questions about the arbitrator's "jurisdiction"—in other words, arbitrability disputes—to the arbitrator. *See* Guild Br. 6.

The problem with the Guild's series of implications and inferences is that they completely ignore the CBA's specific language, cited above, that speaks directly to who should resolve arbitrability disputes. In view of that language, the CBA's limited reference to the AAA Rules (which by its terms is concerned with the conduct of the arbitration *hearing*, not all AAA procedures) cannot possibly be treated as "clear[] and unmistakabl[e]" intent to delegate arbitrability to the arbitrator. *AT&T*, 475 U.S. at 649. Rather, "the specific allocation of the authority to determine issues relating to arbitrability to the court controls over the general reference to the AAA rules." *Tiffany v. KO Huts, Inc.*, 178 F. Supp. 3d 1140, 1146 (W.D. Okla. 2016). Indeed, in these circumstances, courts regularly refuse to divine the requisite "clear and unmistakable" intent to delegate arbitrability. *See, e.g., id.*; *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs. Ltd.*, 902 F. Supp. 2d 87, 97 (D.D.C. 2012) (where entity "agreed to

arbitrate under [the AAA] Rules subject to reservation of 'all rights to contest jurisdiction,'" it did not "clearly and unmistakably agree to arbitrate arbitrability"). To the extent that incorporation of the AAA rules, alongside an express provision reserving arbitrability for the courts, creates any ambiguity, that must be "resolved by application of the presumption that the parties did not agree to 'submit the arbitrability question itself to arbitration.'" *Tiffany*, 178 F. Supp. 3d at 1146; *see also, e.g.*, *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 409 (5th Cir. 2014) (provision stating that parties "reserve[d] all rights to present any and all arguments," including whether agreement "was in effect at the time that a particular grievance arose," was "too ambiguous to evince a 'clear and unmistakable' agreement"); *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930, 940 (N.D. Cal. 2015) (no "clear and unmistakable" delegation where contract stated that "enforcement[ or] validity" disputes "shall be submitted to and determined exclusively by binding arbitration" but also that "'any arbitrator or court' could declare" agreement "invalid or unenforceable").

The Guild's sole authority, *Communications Workers of America v. AT&T Inc.*, 6 F.4th 1344 (D.C. Cir. 2021), does not counsel otherwise. It is true that the arbitration provision in that case, like the arbitration provisions here, "incorporate[d] the AAA rules for arbitration," which "in turn assign threshold questions of arbitrability to the arbitrator." *Id.* at 1347. But the similarities end there. Unlike the CBA provisions here, the agreement in *Communications Workers* included no other language addressing the forum for resolving questions of arbitrability or indicating the parties' intent to reserve those questions for the court. That difference is material, and requires a contrary outcome here.

*          *          *

Having agreed to the express language of Article XXIII(5), and having recognized in pre-dispute communications that the CBA allowed The Post to demand a judicial forum for this arbitrability dispute, the Guild is "swinging for the fences," *Wash.-Balt. Newspaper Guild*, 959 F.2d at 290, by asking the Court to ignore the CBA's plain words. The Court should reject the Guild's attempt to undo its bargain with The Post and instead proceed to resolve the substantive arbitrability question before it, just as the parties intended.

## II.   THE CBA MANDATES ARBITRATION OF DISPUTES ONLY "DURING THE TERM OF THIS AGREEMENT," NOT AFTER ITS EXPIRATION.

On the merits of the arbitrability issue, the guiding precedent is the Supreme Court's *Litton* decision, which specifically addresses when arbitration is required under an expired CBA.  501 U.S. at 204.  The Guild cites *Litton* only in a fleeting footnote.  Guild Br. 4 n.2.  But the framework it established makes clear that the Farhi and Sonmez grievances are not arbitrable.

Under *Litton*, the question whether a grievance is arbitrable after expiration of a CBA is a matter of contract interpretation.  Arbitration in those circumstances is not required by labor law; nor is it presumed wholesale.  Rather, the court must determine if the parties agreed to arbitrate post-expiration.  Generally speaking, for agreements that are silent on the issue or that provide for mandatory arbitration of all disputes "arising under" the contract, a dispute that factually arises during the term of the CBA will remain arbitrable after its expiration.  But the Supreme Court also made clear that parties are free to contract for a narrower rule.  *See* 501 U.S. at 204.

That is exactly what the Guild and The Post did, by providing for arbitration as the sole and exclusive means of grievance resolution only "[d]uring the term of this Agreement."  Other courts have construed similar durational limits in the same way.  And the Guild offers no viable alternative understanding of that language.  The bottom line is that the plain text of the CBA defeats the Guild's position as a matter of ordinary contract construction.

11

A.    **Whether a Dispute is Arbitrable Under an Expired CBA Presents a Matter of Ordinary Contract Interpretation.**

Although the Guild relegates it to a footnote, Supreme Court precedent specifically addresses when arbitration is required under an expired CBA.  *See Litton*, 501 U.S. at 204; *Nolde Bros., Inc. v. Loc. No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 253 (1977). The framework established by these decisions makes clear that nothing stands in the way of plain contractual text that imposes a durational limit on mandatory arbitration.

*First*, the Court in *Litton* held that there is no duty as a matter of *labor law* to arbitrate a dispute after expiration of a collective bargaining agreement.  *See* 501 U.S. at 198–201.  Under the National Labor Relations Act ("NLRA") as interpreted by the National Labor Relations Board ("NLRB"), certain CBA duties extend beyond the expiration of the contract and remain effective while bargaining continues.  *See id.* at 198–99.  But the NLRB "determined that arbitration clauses are excluded" from that rule, and so "an arbitration clause does not, by operation of the NLRA …, continue in effect after expiration of a collective-bargaining agreement."  *Id.* at 199–200.  The Court agreed with that rule, aligned with the fundamental principle that arbitration is "consensual rather than compulsory."  *Id.* at 200.  It thus reaffirmed that "arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of their agreement."  *Id.* at 201.

*Second*, the Court clarified there is no sweeping presumption in favor of arbitration after a collective bargaining agreement expires.  *Id.* at 209.  The Court had previously held that arbitration of CBA grievances should be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960).  But *Litton* explained that this heightened standard governs only if "an effective bargaining agreement exists"; it does not apply "wholesale in the context of an expired bargaining agreement."  501 U.S. at 209.

Notwithstanding that holding, the Guild opens the argument section of its brief with a long block-quote from *United Steelworkers* and its progeny, setting forth the "liberal construction" that generally applies to labor arbitration agreements. Guild Br. 4–5. It claims that the Court therefore need only decide that the Guild "has a plausible argument" in order to compel arbitration. *Id.* at 5 (quoting *Serv. Emps. Int'l Union Loc. 32BJ v. Diversified Servs. Grp., Inc.*, 958 F. Supp. 2d 166, 176 (D.D.C. 2013)). Under *Litton*, however, that is not the correct standard in the context of an expired agreement. The case the Guild cites neither involved an expired contract nor cited *Litton*. In this case, the Court "must determine whether the parties agreed to arbitrate this dispute," *Litton*, 501 U.S. at 209, not merely whether there is a plausible argument that they did.

*Finally*, following from those propositions, *Litton* made clear that parties are free to limit their agreements to arbitrate, durationally or otherwise. As the Court emphasized, "the matter of arbitrability must be determined *by reference to the agreement*, rather than by compulsion of law." *Id.* at 204 (emphasis added). If an agreement includes an "*unlimited* arbitration clause," the Court reasoned that it is fair to presume that arbitration is required "even in the postcontract period" for a dispute that "arises under the contract." *Id.* at 205 (emphasis added). The Court elaborated that a dispute "arises under" the contract in three scenarios, including where the underlying facts and occurrences took place before expiration. *Id.* at 205–06. But those disputes are only presumptively arbitrable if the arbitration clause is "unlimited." Critically, both *Litton* and the earlier decision it built on, *Nolde*, are clear that this is merely a default rule that can be "negated expressly or by clear implication." *Id.* at 204; *see also Nolde*, 430 U.S. at 255 (reasoning that the parties "intended to arbitrate all grievances arising out of the contractual relationship," unless that inference is "negated expressly or by clear implication"). As explained immediately below, negating that inference expressly is exactly what The Post and the Guild did in their CBA.

**B.     The Post and the Guild Expressly Limited Mandatory Arbitration to "During the Term of" Their CBA.**

As a matter of ordinary contract interpretation, The Post and the Guild durationally limited mandatory arbitration to the term of the CBA, and thereby "negated expressly" any inference that grievances must be resolved through arbitration even after that agreement expires.  Under *Litton*, that contractual choice must be respected.  And it means that the Guild has no right, after expiration of the CBA, to compel arbitration of the two grievances at issue here.

The expired CBA provides that arbitration is the "sole and exclusive means of settling any and all alleged violations" of the CBA—but that is only true "[d]uring the term of this Agreement." CBA, Art. XXIII(6).  "Under general contract law, the plain and unambiguous meaning of an instrument is controlling."  *Wash. Metro. Area Transit Auth. v. Mergentime Corp.*, 626 F.2d 959, 960–61 (D.C. Cir. 1980)); *see also Wilkes-Barre Hosp. Co., LLC v. NLRB*, 857 F.3d 364, 373 (D.C. Cir. 2017) ("When interpreting a collective bargaining agreement, we generally apply 'ordinary principles of contract law.'").  Here, "the plain and unambiguous meaning" of Article XXIII(6) is that arbitration ceased to be the "exclusive means" of grievance resolution upon the expiration of "the term of this Agreement."  Thereafter, the Guild cannot compel arbitration.

Courts evaluating similar arbitration provisions have reached similar conclusions.  For example, in *AFSCME Council 25 v. Wayne County*, an agreement provided for arbitration "[i]n the event differences should arise between the Employer and the Union *during the term of this Agreement*."  810 N.W.2d 53, 55 (Mich. Ct. App. 2010).  The court held that this language "plainly precluded" arbitration of a difference that arose after contract expiration.  *Id*.  Of course, the court understood "that the right to arbitration may survive the expiration of a CBA," but by "limit[ing] the grievance procedure to differences arising 'during the term of [the] Agreement,'" the parties there had established that post-expiration disputes were not arbitrable.  *Id.* at 56–57.

Similarly, in *Lansing Newspaper Guild v. Federated Publications, Inc.*, No. 94-CV-71658, 1995 WL 871139 (E.D. Mich. Feb. 22, 1995), an agreement providing for arbitration only for "grievance[s] filed during the life of th[e] contract.'" *Id.* at *1.  The court construed that durational limit to preclude arbitration of grievances that *arose* during the life of the contract but were not *filed* until after expiration.  By choosing not to provide for arbitration of "disputes arising under the terms of the agreement but not during the term of the contract," the parties "negat[ed] by clear implication any presumption that they had agreed to such arbitration."  *Id.* at *2.

To be sure, the CBA here is not exactly the same as the CBAs at issue in either *AFSCME Council 25* or *Lansing Newspaper Guild*.  But the principle remains: If the parties choose to adopt an arbitration clause that (unlike *Litton*) is not "unlimited," 501 U.S. at 205, the court must give force to that negotiated choice.  Here, by providing that arbitration is the exclusive means of resolving grievances only "[d]uring the term of this Agreement," CBA, XXIII(6), the parties negated any presumption that they agreed to broad post-expiration arbitration.

For its part, the Guild offers no alternative interpretation of the durational language in the CBA.  It points to *other sentences* in Article XXIII(6), claiming that they express a "philosophy … in favor of arbitration" while also preserving the parties' rights to seek judicial or administrative relief under certain circumstances.  Guild Br. 8.  But what about Article XXIII(6)'s introductory sentence stating that the arbitration is mandatory only "[d]uring the term of this Agreement"?  The Guild fails to identify any alternative interpretation of that critical narrowing language.  Instead, it just asserts that "certainly" these "few words" do not "deprive the Guild" of its right to arbitration, and says this is so "evident" as to need no explanation.  *Id.*  To the contrary, the only thing that is "evident" is that those words cut off the right to arbitrate upon expiration of the CBA's term, and that the Guild has no way around that problem.

Ultimately, the Guild is simply asking this Court to ignore the CBA's durational limit.  But to "ignore that section … would violate" ordinary "rules of … construction."  *Wharf, Inc. v. District of Columbia*, No. 15-CV-1198, 2021 WL 1198143, at *24 (D.D.C. Mar. 30, 2021).  It is "well-established" that courts should read contractual provisions "so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless or nugatory."  *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. PBGC*, 193 F. Supp. 2d 209, 218 n.4 (D.D.C. 2002)).  And applying that principle here requires reading the first sentence of Article XXIII(6) to mean what it says: that the parties bargained to limit the right to arbitrate to the term of the CBA.

Finally, if there were any remaining doubt over whether the parties truly intended to depart from *Litton*'s default rule for "unlimited" arbitration clauses, the Court should consider the contrast between this CBA and The Post's agreement with another union, the Washington Mailers' Union No. 29 ("Mailers' Union").  Unlike the CBA here, The Post's agreement with the Mailers' Union expressly adopts the *Litton* and *Nolde* default rule to govern post-expiration arbitration.  *See* SUMF ¶ 7; Dunn Decl. ¶ 5 & Ex. D at 4 (stating that arbitration provisions "do not extend beyond contract expiration, *except as consistent with Supreme Court precedent* and binding judicial precedent between the parties" (emphasis added)).  Under that approach, a grievance arising during the term of the contract would remain arbitrable after its expiration.  *Litton*, 501 U.S. at 206.  But the CBA here uses different language, signaling that the parties intended a different result.  *See Calderon v. Atlas S. S. Co.*, 170 U.S. 272, 279 (1898) (inferring that contract used "different language … from that ordinarily employed" to indicate different meaning); *cf. Collins v. Univ. of Notre Dame Du Lac*, 929 F.3d 830, 841 (7th Cir. 2019) (collecting cases applying the "common, if not automatic, presumption in interpreting both contracts and statutes" that the use of "different language in proximate and similar provisions … was intended to convey different meanings").

Had the Guild sought to preserve a post-expiration right to arbitrate, it could have bargained for that right like the Mailers' Union did.  But it did not, and it now seeks to remedy that failure by having the Court read an expansive right to post-expiration arbitration into a CBA that says the opposite.  That is contrary to law.  The Court should decline the Guild's invitation.

## **<u>CONCLUSION</u>**

For the foregoing reasons, The Post respectfully requests that the Court grant its motion for summary judgment and deny the Guild's motion for judgment on the pleadings.


Dated:  November 4, 2022

*/s/ Jacqueline Holmes*
Jacqueline Holmes (D.C. Bar 450357)
Yaakov Roth (D.C. Bar 995090)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Phone: (202) 879-3939

*Counsel for Defendant*
*The Washington Post*

17