# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WASHINGTON-BALTIMORE NEWS GUILD, LOCAL 32035,<br>    Plaintiff,<br>v.<br>THE WASHINGTON POST,<br>    Defendant. | Civil Action No. 22-2484 (CKK) |

## MEMORANDUM OPINION
(July 3, 2023)

In this labor dispute, Plaintiff Washington-Baltimore News Guild, Local 32035

("Plaintiff" or "Guild") seeks to compel arbitration against Defendant The Washington Post

("Defendant" or "The Post") pursuant to Section 301(a) of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185(a).  Upon consideration of the pleadings,[1] the relevant legal

authority, and the record before the Court, the Court shall **GRANT** Defendant's [14] Cross-

Motion for Summary Judgment and **DENY** Plaintiff's [10] Motion for Judgment on the

Pleadings.

---

[1] The Court's consideration has focused on:
- Plaintiff's Complaint to Compel Arbitration, ECF No. 1 ("Complaint" or "Compl.") and the exhibits therein;
- Plaintiff's Motion for Judgement on the Pleadings, ECF No. 10 ("Pl.'s Mot.") and exhibits therein;
- Defendant's Cross-Motion for Summary Judgment, ECF No. 14 ("MSJ") and exhibits therein;
- Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgement on the Pleadings, ECF No. 15 ("Def.'s Opp.");
- Plaintiff's Opposition to Defendant's Motion for Summary Judgement, ECF No. 16 (Pl.'s Opp."); and
- Defendant's Reply in Support of Cross-Motion for Summary Judgement, ECF No. 18 ("Def.'s Reply").

In an exercise of its discretion, the Court concludes that oral argument would not be of material assistance in resolving this matter.

## I.  BACKGROUND

The parties agree as to all material facts.  Def.'s Opp. at 5.  This case involves two separate grievances filed by Plaintiff Washington-Baltimore News Guild, Local 32035, a labor organization that represents employees of Defendant The Washington Post.  Compl. ¶¶ 4-5.  The latest collective bargaining agreement ("CBA") between the parties was dated July 13, 2018, and was later extended to June 30, 2022. *Id.* at ¶ 6.  Article XXIII of the CBA contained a grievance and arbitration provision dictating the procedure to resolve disputes between the parties regarding "an alleged violation of a specific provision of this Agreement, including a controversy over any form of discipline . . ."  *Id.* at ¶ 7.  The third step of that procedure was a "final and binding" decision from a mutually selected arbitrator.  *Id.*

The first grievance involves Paul Farhi, a staff writer for The Post.  *Id.* at ¶ 9.  On or about March 10, 2022, The Post issued a five-day disciplinary suspension without pay to Farhi, alleging that he "jeopardized the safety of a colleague as well as the ability of The Washington Post to report in a foreign country."  *Id.* at ¶ 10.  The Guild contested the suspension as without cause and submitted a grievance to The Post on March 14, 2022. *Id.* at ¶ 10. On July 15, 2022, after the CBA's expiration, the Guild invoked its right to have the grievance submitted to an arbitrator under Article XXIII and communicated that intention to The Post.  *Id.* at ¶ 11.  The Post responded to the Guild on August 9, 2022, refusing to submit the dispute to an arbitrator. *Id.* at ¶ 12.

The second grievance involves Felicia M. Sonmez, a staff writer for the Post.  *Id.* at ¶ 16. On June 9, 2022, The Post notified Sonmez that it was terminating her employment, effective immediately.  *Id.* at ¶ 16.  On June 15, 2022, the Guild filed a grievance on behalf of Sonmez, challenging the dismissal as a violation of her right to job security under the CBA, but the parties

failed to resolve the issue during the first and second steps of the grievance procedure.  *Id.* at ¶ 17, 20. On August 1, 2022, also after the CBA's expiration, the Guild alerted The Post that it was invoking its right to have the grievance heard by an arbitrator.  *Id.* at ¶ 20.  On August 15, 2022, The Post notified the Guild that, like with the Farhi grievance, it refused to submit the Sonmez dispute to an arbitrator.  *Id.* at ¶ 12, 21.

In the case of both the Farhi and the Sonmez grievances, The Post's refusal to submit to arbitration is governed by Article XXIII(6) of the CBA, which provides:

> During the term of this Agreement or any extension thereof, the grievance and arbitration procedures of the Agreement shall be the sole and exclusive means of settling any and all alleged violations of any specific provision of the Agreement . . . .

Complaint, Ex. 1(a), at 56. The Post argues that the conditional language that begins Article XXIII(6) means that once the CBA has expired, The Post is no longer required to resolve grievances through arbitration. The Guild rejects The Post's interpretation of Article XXIII(6), arguing instead that The Post is required to submit to arbitration of these grievances, even after the CBA has expired.

## II.  LEGAL STANDARD

### A.  Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion brought pursuant to Rule 12(c) requires the Court to render "a judgment on the merits . . . by looking at the substance of the pleadings and any judicially noted facts."  *All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016).  In other words, the moving party must "demonstrate that the law entitles him to win given the undisputed facts that have been alleged in both parties' pleadings."  *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018).  Although Rule

12(c) motions have frequently been analyzed pursuant to the same framework as motions brought under Rule 12(b)(6), a Rule 12(c) motion "comes closer to a summary judgment type of determination." *Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 84 (D.D.C. 2018). Accordingly, the Rule 12(c) burden is "substantial" and requires the movant to demonstrate "both that there is no material dispute of fact" and that "the law is such that the movant is entitled to judgment as a matter of law." *Id.* (citing *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391–92 (D.D.C. 2016)).

### B. Summary Judgment

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law . . ." *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

Like any contract, a court interprets collective bargaining agreements "according to ordinary principles of contract law." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). "Contract interpretation begins with the plain meaning of the contract's text." *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 862 (D.C. Cir. 2015). Language in a collective bargaining agreement is "ambiguous or vague" only if it is "reasonably susceptible to different constructions and interpretations." *Holland v. Freeman United Coal Mining Co.*, 574 F. Supp.

2d 116, 129 (D.D.C. 2008) (PLF) (citing *Carey Canada, Inc. v. Columbia Casualty Co.*, 940 F.2d 1548, 1556 (D.C. Cir. 1991) (internal quotation marks removed)).  However, the mere fact that parties dispute the meaning of a term does not make that language ambiguous.  *Id.*  If language is "unambiguous," then "its meaning must be ascertained in accordance with its plainly expressed intent."  *M & G Polymers*, 574 U.S. at 435.  Faced with an unambiguous contract, the Court may not "add words to a contract [or] change the parties' bargain."  *See Wharf, Inc. v. D.C. Wharf Horizontal Reit Leaseholder LLC*, 2021 WL 1198143 at *29 (D.D.C. Mar. 30, 2021) (CKK) (applying District of Columbia law).  At the same time, the Court must read the contract "as a whole" and "give effect to all its provisions."  *KiSKA Const. Corp. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1164 (D.C. Cir. 2003) (internal citation and quotation marks omitted).

At issue here is the language at the beginning of Article XIII(6)—"During the term of this Agreement . . ."  *See* Complaint, Ex. 1(a), at 56.  The Post argues that this language means that once the CBA has expired, arbitration is no longer "the sole and exclusive means of settling any and all alleged violations of any specific provision of the Agreement[,]" and, as a result, the Guild cannot compel The Post to resolve the grievances at issue via arbitration.  *See id.*  The Guild disputes this interpretation, contending that "The Post is obliged to arbitrate the grievances on their merits" even after the CBA has expired.  *See* Pl.'s Opp. at 1.  The Post has the better of the argument.

The Guild is quite right that arbitration is broadly mandatory under the CBA.  Complaint, Ex. 1(a), at 56.  It is mandatory, however, "[d]uring the term" of the CBA.  *Id.*  The plain and obvious reading of this clause means that under the condition specified, the agreement's term, arbitration is mandatory but, when the agreement's term has expired, arbitration is no longer

mandatory.  In other words, when the contract's triggering condition for the required act is no longer present, the act is no longer required.  This straightforward principle is often expressed as "the expression of one thing excludes the other" or, in Latin, *expressio unius est exclusio alterius See, e.g.*, *In re Celotex Corp.*, 487 F.3d 1320, 1334 (11th Cir. 2007) (applying doctrine to conclude that contractual provision was "clear[] and precise[]"); *Stevens v. GFC Lending, LLC*, 138 F. Supp. 3d 1345, 1350 (N.D. Al. 2015) (same, as to arbitration agreement).

Nowhere in Article XIII(6) of the CBA is there mention that the parties are bound by the terms of Article after its expiration, which notably is language the parties included in other portions of the CBA.  *See* Complaint, Ex. 1(a), at 51 ("During the term of its Agreement and after its expiration . . ."). Had the parties intended for arbitration to be "the sole and exclusive means" of settling grievances after the expiration of the CBA, they could have "easily inserted such a requirement" into Article XIII(6)—but they clearly chose not to.  *See Pub. Util. Dist. No. 1 of Ferry Cnty., Wash. v. United States*, 20 Cl. Ct. 696, 700 (1990).  Thus, Article XIII(6)'s reference only to "the term of the Agreement," without mention of requirements post-expiration, indicates that the parties did not intend Article XIII(6) to be binding once the CBA expired.  *See Stevens*, 138 F. Supp. 3d at 1350 ("[T]he 2012 agreement's reference only to prior contracts and agreements indicates that GFC did not intend the 2012 arbitration agreement to cover future agreements.").

Also useful is the omitted-case canon, which instructs that "[n]othing is to be added to what the text states or reasonably implies."  *See Britt v. IEC Corp.*, Case No. 20-60814-CIV, 2021 WL 4147714 at *6 (S.D. Florida Sept. 13, 2021) (quoting A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012)) (internal quotation marks omitted).  As Article XIII(6) is currently written, it "reasonably implies" that the parties are

required to submit to arbitration only "[d]uring the term of the Agreement." *See Britt*, 2021 WL 4147714 at *6 (internal citation and quotation marks omitted); Complaint, Ex. 1(a), at 56.  But in spite of that reasonable implication, the Guild insists that Article XIII(6) binds the parties even after the expiration of the CBA.  *See* Pl.'s Opp. at 1.  Such a reading would require the Court to add words to the durational language such that it reads, "During the term of its Agreement *and after its expiration . . .*"  Facing clear contractual language, however, "the Court may not add terms to a contract that are not there[.]"  *United Assoc. of Journeymen and Apprentices of the Plumbing & Pipe Fitting Indus. of U.S. & Can. v. Gemma Power Sys.*, Civ. A. No. 21-0922 (CKK), 2022 WL 2785971, at *4 (D.D.C. July 15, 2022) *aff'd* 2023 WL 411333 (D.C. Cir. June 22, 2023) (unpublished).

After analyzing the language in Article XIII(6) through these various lenses, it becomes clear that the language at issue is not "reasonably susceptible to different constructions and interpretations" and is therefore not ambiguous.  *See Holland*, 574 F. Supp. 2d at 129 (internal citations and quotation marks removed).  As such, "its meaning must be ascertained in accordance with its plainly expressed intent."  *M & G Polymers*, 574 U.S. at 435.  The Court concludes that Article XIII(6), by its plain meaning, compels the parties to submit to arbitration while the CBA is active, but that once the CBA expires, the parties are free to refuse arbitration. Because the demands to proceed to arbitration were submitted after the CBA expired on June 30, 2022, The Post is not required to arbitrate the grievances involving Farhi and Sonmez. *See* Compl. ¶ 6.

#

#

#

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's [14] Motion for Summary Judgment and **DENIES** Plaintiff's [10] Motion for Judgment on the Pleadings.  An appropriate order accompanies this memorandum opinion.

Dated: July 3, 2023                               _____/s/_____
                                                  COLLEEN KOLLAR-KOTELLY
                                                  United States District Judge